UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GWENDOLYN SHERMAN,

                                    Plaintiff,

     - against -

                                                              **OPINION & ORDER**
YONKERS PUBLIC SCHOOLS, YONKERS
PUBLIC SCHOOLS BOARD OF EDUCATION,                            No. 21-CV-7317 (CS)
EDWIN M. QUEZADA, Superintendent, CESAR
E. CHAVES ELEMENTARY SCHOOL, f/k/a
CEDAR PLACE SCHOOL, MAGDALINE M.
DELANY, Principal, John Doe, #1-50, and Mary
Roe, #1-50,

                                    Defendants.
------------------------------------------------------------x

Appearances:

Adrian J. Johnson
Johnson & Associates, PC
Iselin, New Jersey
*Counsel for Plaintiff*

Joanna M. Topping
Abrams Fensterman, LLP
White Plains, New York
*Counsel for Defendants*

Seibel, J.

        Before the Court is the motion to dismiss of Defendants Yonkers Public Schools and

Yonkers Public Schools Board of Education (together, "YPS"), Dr. Edwin M. Quezada, and

Magdaline M. Delany (collectively, "Defendants").  (ECF No. 25.)[1]  For the following reasons,

the motion is GRANTED.

_____

        [1] Defendants state, and Plaintiff does not dispute, that Cesar E. Chavez School –
erroneously named as "Cesar E. Chaves Elementary School" in the initial Complaint, (ECF No.

I.      **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's AC.

 A.  **Factual Background**

Plaintiff Gwendolyn Sherman is Black woman employed by YPS as a special education teacher at the Cesar E. Chavez School ("Chavez").  (AC ¶¶ 14-15.)  Defendant Magdaline M. Delany is the principal at Chavez.  (*Id.* ¶¶ 16-17.)  Plaintiff alleges that Defendants created a hostile work environment; discriminated against her on the basis of her race, (AC ¶¶ 36, 78, 79), color, (*id.* ¶ 79), religion, (*id.*), gender, (*id.* ¶ 78), and veteran status, (*id.*); and retaliated against her for speaking out about student placement, (*id.* ¶ 46), student misconduct, (*id.* ¶32), and child abuse (*id.* ¶¶ 64-67).

Plaintiff alleges that from 2009 to 2019, Defendants "collectively and individually" publicly belittled and humiliated her and reprimanded her without basis.  (*Id.* ¶¶ 18-20.)  She alleges she faced "verbal, mental and emotional abuse" daily during this period.  (*Id.* ¶ 71.)  She does not provide examples or any specifics regarding these alleged belittlings, reprimands or abuses.

Plaintiff states that Defendants have reassigned Plaintiff's classroom aides to allegedly "increase the difficulty" for Plaintiff.  (*Id.* ¶ 87.)  As early as 2012, Defendant Delany allegedly started punishing Plaintiff for protesting the reassignment by transferring back to Plaintiff's class "difficult" students who had earlier been transferred to non-white co-workers by the Special Education Placement Department.  (*Id.* ¶¶ 24, 46.)  These transfers from non-white teachers are also alleged to constitute "favoritism towards Caucasian teachers."  (*Id.* ¶ 83.)

---

1 ("IC")), and Amended Complaint, (ECF No. 11 ("AC")) – is within YPS and therefore not a separate legal entity.  (ECF No. 26 ("Ds' Mem.") at 1 n.1.)

She alleges that starting in 2013, Defendant Delany purposefully tampered with her evaluations, "in an attempt to cause fear," (*id.* ¶ 21), and "force her to resign or retire," (*id.* ¶¶ 31, 55).  She provides no facts regarding what was changed in her evaluations or what effect this alleged conduct had.  She alleges that Defendants defamed her by portraying her negatively to others outside of the school, preventing her from transferring, being promoted, or being hired in other districts.  (*Id.* ¶¶ 97-99.)  No specifics are provided regarding any allegedly false statements made by Defendants, to whom they were made, when they were made, how they were communicated, or what connection they had to positions for which Plaintiff applied.  Plaintiff further alleges that from 2014 through 2019, Delany allegedly "blackballed" Plaintiff from applying for or obtaining higher-level positions for which Plaintiff believes she was qualified, (*id.* ¶ 73), and Plaintiff had to train staff members newly appointed to those positions, (*id.* ¶ 74). No information is provided about these positions, what Delany said or did, how Delany communicated with the decision makers, or how Plaintiff's qualifications compared to those of other applicants.

Pursuant to New York state law, Plaintiff was required to report suspected child abuse. (*Id.* ¶¶ 61-63); *see* N.Y. Soc. Serv. Law § 413(1)(a) (teachers, among others, "are required to report . . . when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child.").  During the 2016-2017 school year, Plaintiff reported to her building principal (presumably Delany) that she believed another teacher at the school was abusing a student, and was told that she should not report it, as the school would conduct an internal investigation.  (AC ¶¶ 64-66.)  She alleges that she was then "targeted" for opposing orders to not report such incidents, (*id.* ¶ 33; *see id.* ¶ 32), in that "harassing activities," (*id.* ¶ 67), directed against her intensified, (*id.* ¶¶ 67, 71).  She does not

describe what she said or did to protest the alleged orders.  The only specific she provides about the retaliation is that "Defendants, collectively and individually, kept [her] from leaving her classroom at any time for any reason," (*id.* ¶ 68), but she also alleges that "Defendant Delany instructed [her] not to leave her classroom outside of her lunch or planning period," (*id.* ¶ 69). Plaintiff believes that the retaliatory harassment was intended to hamper her ability to teach and advocate on behalf of her special education and African-American students.  (*Id.* ¶ 34.)  Plaintiff also believes that because she expressed concerns about "the sexual misconduct of emotionally disturbed students, both disabled and non-disabled," Defendants retaliated against her by writing negative and false evaluations, verbally abusing and threatening her, humiliating her in front of her peers, and more.  (*Id.* ¶ 32.)  She does not say when or how she expressed these concerns, nor are there any facts regarding the evaluations or the other abuse.

Plaintiff also alleges she was assaulted by Defendant Delany.  In November 2017, after meeting with Plaintiff in her office, Delany allegedly "had an angry attitude and rushed [Plaintiff] out of the door."  (*Id.* ¶¶ 89-90.)  Plaintiff turned around to ask Delany a question but she "slammed her door in [Plaintiff]'s face."  (*Id.* ¶ 91.)  Although the door did not touch her, Plaintiff believed she was in "imminent danger of being hit by the door."  (*Id.* ¶ 92.)

Beginning in 2018 and through 2019, according to Plaintiff, Delany "embarrassed, humiliated and belittled Plaintiff in the presence of other staff members."  (*Id.* ¶ 45.)  At unstated times, "Defendants, collectively and individually," would allegedly reprimand Plaintiff "openly and publicly throughout the building," (*id.* ¶ 26), and publicly humiliate her during staff meetings, (*id.* ¶ 29), but again no facts about the alleged conduct are provided.  Plaintiff alleges that she is "treated . . . differently" in the presence of non-white team members, (*id.* ¶ 23), but does not say from whom she is treated differently, how she is treated, or how that treatment is

4

different if white staff members are present.  Defendants allegedly stated that they had received complaints about Plaintiff from other staff members, but would not identify who lodged these complaints and did not put any complaints in her employee file.  (*Id.* ¶¶ 26-27.)

Plaintiff is allegedly the only special education teacher who is denied access to information related to students' assessments and performance.  (*Id.* ¶¶ 28, 52; *see id.* ¶ 85.) Plaintiff was "forced . . . to come out of her classroom to address behavioral needs of students in other classrooms," which was not required of other teachers.  (*Id.* ¶ 84.)

Allegedly at the instruction of Defendant Delany, (*id.* ¶ 54), support staff, "collectively and individually," would not schedule meetings for Plaintiff with the District superintendent or other administrators, (*id.* ¶ 30).  Further, she claims she was denied funding for class trips, even though her white counterparts regularly received funding approval.  (*Id.* ¶¶ 80-81.)  She also believes she was intentionally excluded from administrative emails that were sent to other staff members.  (*Id.* ¶ 82.)

Plaintiff alleges that as a result of Defendants' actions, she has suffered from many panic attacks, (*id.* ¶ 56), and in September 2019 applied to retire "to escape this nightmare," (*id.* ¶ 57), but due to the alleged stress her co-workers were facing, she withdrew her application and returned to work in November 2019, (*id.* ¶ 58).  She also claims that she would have earned more had she gotten one of the positions she believes she was denied as a result of Defendants' "slanderous statements."  (*Id.* ¶ 99; *see id.* ¶ 100.)  These false statements have also resulted in her taking a medical leave of absence.  (*Id.* ¶ 101.)

###  B.  <u>Procedural History</u>

Plaintiff filed her IC in this Court on August 31, 2021, bringing federal and state employment discrimination claims against Defendants YPS, Quezada, Cesar E. Chaves

Elementary School, Delany, John Does #1-50, and Mary Roes #1-50.  (ECF No. 1.)  The case

was initially assigned to Judge Paul A. Crotty.  No summons was issued, yet Plaintiff purported

to have served Defendants.  (*See* ECF Nos. 6, 8.)  On December 7, 2021, Defendants requested

an extension of time to respond to the IC, which Judge Crotty granted.  (ECF Nos. 4-5.)

Defendants then requested a conference in advance of their anticipated motion to dismiss.  (ECF

No. 6.)  On January 26, 2022, the matter was reassigned to the undersigned in White Plains.  The

Court then set a date for a pre-motion conference and ordered Plaintiff to respond to Defendants'

earlier letter.  (ECF No. 7.)  Plaintiff responded, (ECF No. 8), and on February 23, 2022, the

Court held a pre-motion conference, granted Plaintiff leave to amend her complaint, and set a

briefing schedule for this motion, (Minute Entry dated Feb. 23, 2022).[2]  Plaintiff filed her AC on

April 8, 2022, summonses were issued, and the instant motion followed.  (AC; ECF Nos. 13-22;

ECF Nos. 25-28.)

## II.     LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3]  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

---

[2] At the pre-motion conference, Plaintiff's counsel had no explanation for why he had served Defendants with an unsigned, unsealed "summons" that had not been issued by the Court, but in the interest of resolving the claims on the merits, I extended Plaintiff's time to serve to 21 days after the filing of the AC.

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[4]

_____

[4] Plaintiff's counsel acknowledges that *Twombly* and *Iqbal* are more recent than *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), yet seems to rely on *Conley*'s statement that dismissal is not warranted unless it is apparent that Plaintiff can prove no set of facts that would entitle it to relief.  (ECF No. 27 ("P's Opp.") at 9.)  *Conley*'s "no set of facts" standard, however, was "retire[d]" by the Supreme Court in *Twombly*, 550 U.S. at 562-63, and the applicable standard is now one of plausibility, *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  No attorney should be citing to or relying on the "no set of facts" standard over a decade after it has been overruled.

III.   **DISCUSSION**

Plaintiff brings seven claims:  (1) race-based discrimination and retaliation under 42 U.S.C. § 1981, (AC at 8-9); (2) conspiracy under 42 U.S.C. § 1985(3), (*id.* at 9-10); (3) hostile work environment, untethered to any provision of law, (*id.* at 10-13); (4) retaliation, untethered to any provision of federal law, (*id.* at 13-15); (5) discrimination under Title VI of the Civil Rights Act of 1964, (*id.* at 15-17);[5] (6) assault, (*id.* at 17-18); and (7) defamation, (*id.* at 18-19). All of these claims are dismissed.

A.   **Federal Claims**

1.   **Statute of Limitations**

Defendants argue that the statute of limitations limits Plaintiff's discrimination and retaliation claims under § 1981 and Title VI.  (Ds' Mem. at 14.)

"[E]mployment discrimination claims arising under . . . § 1981 are subject to the four-year federal 'catch-all' statute of limitations. . . ."  *Bedden-Hurley v. N.Y.C. Bd. of Educ.*, 385 F. Supp. 2d 274, 278 (S.D.N.Y. 2005); *see James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 317-18 (E.D.N.Y. 2012).  A three-year statute of limitations governs Title VI claims.  *Singh v. Wells*, 445 F. App'x 373, 376 (2d Cir. 2011) (summary order).  Recovery for discrete acts of discrimination that occur outside the applicable limitations period are barred, but a hostile work

---

[5] The fifth claim in the AC is captioned "Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq."  (AC at 15.)  This caption is puzzling, because § 2000d is Title VI of the Civil Rights Act, whereas Title VII is § 2000e.  It is even more puzzling because I specifically told Plaintiff's counsel at the pre-motion conference to make clear under which Title Plaintiff was bringing her claim.  "Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012).  Because Plaintiff in her fifth claim alleges that Defendants receive federal funds, (AC ¶ 76), and because at the pre-motion conference Defendants represented that no administrative complaint had been filed, as would be required for a Title VII claim, I conclude that Plaintiff means to assert a Title VI claim.

environment claim is timely, even if some of the conduct at issue occurred before the limitations

period, so long as an act contributing to that environment occurred within that period. *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

Plaintiff filed her IC in this Court on August 31, 2021. Accordingly, any discrete acts of

discrimination or retaliation under § 1981 that are alleged to have occurred prior to August 31,

2017, and any such acts under Title VI that are alleged to have occurred prior to August 31,

2018, are time barred.

### 2.  Claims as to YPS

Defendants argue that Plaintiff's § 1981 and Title VI claims against YPS fail because

Plaintiff does not allege that any civil rights violations occurred because of a municipal policy or

custom. (Ds' Mem. at 3-4.) Plaintiff did not address this argument in her opposition, and thus

has abandoned those claims as to YPS. *Horsting v. St. John's Riverside Hosp.*, No. 17-CV-3230,

2018 WL 1918617, at *6 (S.D.N.Y. Apr. 18, 2018) ("At the motion to dismiss stage, where

review is limited to the pleadings, a plaintiff abandons a claim by failing to address the

defendant's arguments in support of dismissing that claim."); *Johnson v. City of N.Y.*, No. 15-

CV-8195, 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017) ("By failing to address

Defendants' arguments in support of dismissing this claim, it is deemed withdrawn or dismissed

as abandoned."); *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (claims

abandoned where Plaintiff "did not raise any arguments opposing Defendants' motion")

(collecting cases); *Bonilla v. Smithfield Assocs. LLC*, No. 09-CV-1549, 2009 WL 4457304, at *4

(S.D.N.Y. Dec. 4, 2009) (claims deemed abandoned and dismissed as a matter of law where

defendants raised three arguments for dismissal of those claims and plaintiff responded to only

one).

But while Defendants are correct that when a municipality (or an individual in his official capacity, *see Hafer v. Melo*, 502 U.S. 21, 25 (1991)), is sued for discrimination under § 1981, the plaintiff must show that the challenged acts were performed pursuant to a municipal custom or policy, *see, e.g., Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989), it has not provided authority for the proposition that the same is true under Title VI.  Thus, despite Plaintiff's failure to oppose, I will dismiss only the § 1981 claims against Defendant YPS for failure to allege a policy or custom.  As will be seen, the Title VI claim fails for different reasons.

### 3. <u>Personal Involvement</u>

Defendants argue that Plaintiff has failed to plead facts showing the personal involvement of Defendant Quezada.  (Ds' Mem. at 5-6.)  As for claims under 42 U.S.C. § 1983, a showing of personal involvement by the defendant is required for liability under § 1981.  *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *Baker v. Connecticut*, No. 03-CV-1994, 2006 WL 581205, at *10 (D. Conn. Mar. 8, 2006); *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) ("[P]ersonal liability under section 1981 must be predicated on the actor's personal involvement.").  While *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), laid out a special test for supervisory liability, outlining five ways a plaintiff could show personal involvement of a supervisor, the Second Circuit has clarified that under the Supreme Court's ruling in *Iqbal*, the *Colon* test is invalid and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  "Simply put, there's no special rule of liability for supervisors."  *Id*.  While "'[t]he factors necessary to establish a [§ 1981] violation will vary with the constitutional provision at

issue' because the elements of different constitutional violations vary," *id*. (quoting *Iqbal*, 556

U.S. at 676), "[t]he violation must be established against the supervisory official directly," *id*.

Plaintiff has not pleaded enough facts to render it plausible that Defendant Quezada – the

Superintendent of YPS, (AC ¶ 8) – was personally involved in the alleged violations.  While

Plaintiff alleges that "Defendants, collectively and individually" retaliated against Plaintiff,

created a hostile work environment, belittled and humiliated her, and reprimanded her for no

reason, (*id*. ¶¶ 18-20, 35-38), these allegations are insufficient because they "lump[] all the

defendants together in each claim and provide[] no factual basis to distinguish their conduct."

*Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018);

*see Ruiz v. Westchester County*, No. 18-CV-7007, 2020 WL 4340788, at *4 (S.D.N.Y. July 28,

2020) (collecting cases); *see also Gonzalez v. Yepes*, No. 19-CV-267, 2019 WL 2603533, at *7

(D. Conn. June 25, 2019) ("As a corollary of the personal involvement requirement, complaints

that rely on 'group pleading' and fail to differentiate as to which defendant was involved in the

alleged unlawful conduct are insufficient to state a claim.") (collecting cases); *5465 Route 212,

LLC v. N.Y. State Dep't of Transp*., No. 19-CV-1510, 2020 WL 6888052, at *9 (N.D.N.Y. Nov.

24, 2020) ("Because the personal involvement of a defendant is a prerequisite to an award of

damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without

making specific individual factual allegations").  Plaintiff provides no specifics as to anything

Quezada did or did not do, or how he was involved in the alleged mistreatment of Plaintiff.

It is apparent that Quezada is being sued merely based on his supervisory position, which

even before *Tangreti* would not have sufficed to show personal involvement.  *See, e.g.*, *Banks v.

Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2004) ("Where a defendant is a supervisory official,

a mere linkage to the unlawful conduct through the chain of command (*i.e.*, under the doctrine of

*respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct."). Further, Plaintiff in her opposition does not address how Quezada may have been personally involved, so her § 1981 claims against him have been abandoned.

The § 1981 claims against Quezada are dismissed.

### 4.   Discrimination Claims

#### a.   Section 1981 Claim

As established above, Plaintiff's § 1981 claim remains only as to Defendant Delany. To state a claim under that statute, a plaintiff "must allege facts supporting the following elements: (1) plaintiff[ is a] member[] of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000).

In her AC, Plaintiff summarily states, "Defendants' conduct . . . , motivated in substantial respect by race-based animus, violated Plaintiff's rights as guaranteed [under] 42 U.S.C. § 1981." (AC ¶ 36.) But despite this allegation, the vast majority of the facts she provides are wholly unconnected to race. Plaintiff states that she was singled out – for example, she alleges she is the only special education teacher who was denied information on students' assessments and performance, (*id.* ¶¶ 28, 86); she was excluded from administrative emails that had been sent to other staff members, (*id.* ¶ 83); and, unlike other teachers, she had to leave her classroom to address other students' behavioral issues, (*id.* ¶ 84) – but nowhere does she provide facts suggesting that she was subjected to such treatment because of her race, as opposed to, say, Delany not liking her. She does not describe any racially discriminatory remarks by Delany or any mistreatment of other Black teachers. Indeed, that Plaintiff attributes her mistreatment variously to her race, color, gender, veteran status, and religion, (*id.* ¶¶ 78-79), illustrates that

Plaintiff lacks facts supporting the notion that her treatment was attributable to any particular protected characteristic.

The only allegations Plaintiff connects to race are that Defendants never approved her requests to fund class trips, even though her white colleagues regularly received approval, (*id.* ¶ 81), and that Delany reassigning difficult students back to Plaintiff was favoritism toward Caucasian teachers, (*id.* ¶ 83).  Elsewhere Plaintiff alleges that the difficult students came back to her from non-white teachers, (*id.* ¶ 24), so it is hard to see how that conduct could reflect favoritism toward white teachers.  And Plaintiff provides no facts about her trip requests or those of other teachers that would show the requests to be sufficiently similar to give rise to an inference of discrimination.  *See Wegmann v. Young Adult Inst., Inc., Trustees of Supplemental Pension Plan for Certain Mgmt. Emps. of Young Adult Inst.*, No. 20-1147, 2021 WL 3573753, at *4 (2d Cir. Aug. 13, 2021) (where plaintiff seeks to make out *prima facie* case by reference to disparate treatment of other employees, situation of those employees must be sufficiently similar to support minimal inference that difference in treatment may be attributable to discrimination).

But even if she had, and even assuming that she meant to say that the difficult students came back to her from white teachers, Plaintiff's claim fails as to the third element of her *prima facie* case, because the treatment she describes does not amount to an adverse employment action.  For purposes of a discrimination claim, "[a]n adverse employment action is a materially adverse change in the terms and conditions of employment," *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008), "one which is more disruptive than a mere inconvenience or an alteration of job responsibilities," *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).  "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices unique to a particular situation." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

As a general matter, "assignments that are part of an employee's normal responsibilities are not adverse employment actions where, as here, the rate of pay and benefits remains the same." *Rodriguez v. Coca Cola Refreshments USA, Inc*., No. 12-CV-234, 2013 WL 5230037, at *3 (E.D.N.Y. Sept. 16, 2013) (collecting cases); *see Potash v. Fla. Union Free Sch. Dist*., 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ("Changes in assignments or responsibilities that do not radically change the nature of work are not typically adverse employment actions.")  But "[a] change in duties or job reassignment may be an adverse employment action, if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Edwards v. Huntington Union Free Sch. Dist*., 957 F. Supp. 2d 203, 211 (E.D.N.Y. 2013).  "A plaintiff can make such a showing by demonstrating that the new assignment was materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement."  *Id*.  But unfair work assignments or undesirable duties, absent negative ramifications for employment status, do not rise to the required level.  *Grant v. N.Y. State Off. for People with Developmental Disabilities*, No. 12-CV-4729, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013).  Nor does being berated or embarrassed by a supervisor.  *Voss v. McDonough*, No. 17-CV-9015, 2021 WL 4199941, at *10, *17 (S.D.N.Y. Sept. 15, 2021); *see Stewart v. City of N.Y.*, No. 18-CV-7140, 2022 WL 4485048, at *5 (E.D.N.Y. Sept. 27, 2022) (reprimands, admonishments, and other actions causing embarrassment and anxiety are not adverse actions where they result in no tangible employment consequences).

Disapproval of trip requests and assignment of "difficult" students do not involve a guaranteed employment benefit or a term or condition of employment, such that the denial

14

amounted to a material adverse action.  *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (unfair criticism, unfavorable schedules, or undesirable work assignments do not rise to level of adverse employment actions because they do not have material impact on terms and conditions of employment).  Nor does Plaintiff allege that teaching "difficult" students was outside her job responsibilities, *see Rodriguez*, 2013 WL 5230037, at *3 ("[I]t is well established that assignments that are part of an employee's normal responsibilities are not "adverse employment actions" where, as here, the rate of pay and benefits remains the same."), or "so significant as to constitute a setback to the plaintiff's career," *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000).  At most, what Plaintiff describes can be characterized as "mere inconvenience," which is not enough to constitute an adverse employment action.  *Brown*, 673 F.3d at 150.[6]

Therefore, Plaintiff's § 1981 discrimination claim is dismissed.

b.   Title VI Claim

Section 601 of Title VI of the Civil Rights Act of 1964 provides:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  For the same reasons described above, Plaintiff has not made out a plausible discrimination claim.  She has provided

---

[6] To the extent Plaintiff wishes to bring discrimination claims based on gender, those claims also fail.  Gender is not a protected class under § 1981.  *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("Section 1981 does not prohibit discrimination on the basis of gender or religion, national origin, or age.")  More fundamentally, the AC is devoid of any facts even faintly suggesting that Defendants discriminated on the basis of her gender.  The same is true as to Plaintiff's religion (which she does not describe) and veteran status.

only conclusions, not facts, to support the notion that her race resulted in any discrimination. But her Title VI claim must also be dismissed for independent reasons.

To begin, Title VI does not provide for individual liability, *see Bayon v. State Univ. of N.Y. at Buffalo*, No. 98-CV-578, 2001 WL 135817, at *2 (W.D.N.Y. Feb. 15, 2001), so any Title VI claim against Defendants Quezada and Delany in their individual capacities would have to be dismissed.  Further, "covered entities can only be sued for employment discrimination [under Title VI] 'where a primary objective of the Federal financial assistance . . . is to provide employment.'"  *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1531 (10th Cir. 1995) (quoting 42 U.S.C. § 2000d-3).  Thus, "for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment."  *Ass'n Against Discrimination in Emp., Inc. ("AADE") v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981); *see Sulehria v. New York*, No. 13-CV-6990, 2014 WL 4716084, at *5 (S.D.N.Y. Sept. 19, 2014) ("To state a claim under Title VI, a plaintiff must plausibly allege . . . that the federal funds have been made available primarily for providing employment.").  "This section essentially requires a logical nexus between the use of federal funds and the practice toward which the action is directed." *Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006).

Plaintiff has not alleged, even in conclusory fashion (which in any event would not suffice), that the federal funds received by YPS were primarily intended to provide employment. *See Gilmore v. Univ. of Rochester*, 410 F. Supp. 2d 127, 132 (W.D.N.Y. 2006) (Title VI claim dismissed where complaint alleged only that defendant received federal funds, not that the funds were primarily intended to provide employment).  The AC alleges that "[a]ll Defendants in this matter, in some form or another, receive financial benefits that can be traced back to Federal

spending," (AC ¶ 76), but that is not enough to show that any federal funds were primarily intended to provide employment. *See Verdi v. City of N.Y.*, 306 F. Supp. 3d 532, 546 (S.D.N.Y. 2018) (Title VI claim dismissed because the "allegations regarding federal funding are bare and conclusory and do not describe the federal funding the DOE received, let alone link that funding to the students whose discrimination was the subject of Plaintiff's complaints"). Plaintiff thus has not plausibly alleged any "logical nexus between the use of federal funds and the practice toward which agency action is directed." *AADE*, 647 F.2d at 276; *see Dobroff v. Hempstead Union Free Sch. Dist.*, No. 21-CV-1567, 2022 WL 4641128, at *5 (E.D.N.Y. Sept. 30, 2022).[7]

Plaintiff's Title VI claim is therefore dismissed.

### 5.  Conspiracy Claim Under Section 42 U.S.C. § 1985(3)

To state a claim under § 1985(3), a plaintiff must show "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *see* 42 U.S.C. § 1985(c). "[T]o maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). Here, Plaintiff has provided no more than a conclusory allegation of conspiracy, stating, "Under the premises Defendants' conduct violated Plaintiff's rights . . . .  [W]e have such conspiracies by Defendants to violate Plaintiff's

---

[7] In addition, as Defendants point out, (ECF No. 28 ("Ds' Reply") at 4-5), Plaintiff does not address this argument in her opposition, and thus has abandoned her Title VI claim.

constitutional rights."  (AC ¶¶ 40, 42.)  On this basis alone, Plaintiff's conspiracy must be dismissed for failure to state a claim.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).  That Plaintiff's conclusory allegations are aimed at Defendants "collectively" does not, as Plaintiff argues in her opposition, render it plausible that Defendants acted as a collective and "with one objective in mind."  (*See* P's Opp. at 8.)

Defendants also argue that Plaintiff's conspiracy claim fails because she does not show that racial animus motivated Defendants' claimed conspiracy.  (Ds' Mem. at 10-11.)  To plead a § 1985(3) claim, "[t]he conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'"  *Dolan*, 794 F.3d at 296 (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).  The AC does not explicitly allege any race-based motivation for her conspiracy claim, and – as discussed above – barely mentions facts related to race.  Even in her opposition, Plaintiff simply states that she has adequately shown that Defendants acted in concert toward her, (P's Opp. at 8), with no effort to describe any such actions or connect them to race.

Moreover, even if a sufficient connection to race were pleaded, the AC (as discussed) provides facts only against Delany, and she cannot conspire with herself.  *See Jianjun Li v. Vill. of Saddle Rock*, No. 22-CV-2289, 2021 WL 1193618, at *10 (E.D.N.Y. Mar. 30, 2021); *Heinfling v. Colapinto*, 946 F. Supp. 260, 266-67 (S.D.N.Y. 1996).  Finally, even if Plaintiff had pleaded facts as to Quezada, her claim would be barred by the intracorporate conspiracy doctrine.  Under this doctrine, "officers, agents and employees of a single corporate entity are

legally incapable of conspiring together."  *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999) (applying doctrine in § 1985(3) context).[8]

For all these reasons, the § 1985(3) conspiracy claim is dismissed.

### 6. Retaliation

Plaintiff brings a "workplace retaliation" claim, alleging Defendants retaliated against her after she reported a potential instance of child abuse in 2016-2017.  (AC ¶¶ 64-66.)  She claims that after she reported the incident, Defendants harassed her by keeping her from leaving her classroom; verbally, mentally, and emotionally abused her; and obstructed her ability to apply for and get a higher-level administrative position.  (*Id.* ¶¶ 67-74.)

As an initial matter, Plaintiff's retaliation claim is pleaded without specifying the statute under which it is brought.  Defendants analyze it as a claim under § 1983 for retaliation for opposition to a discriminatory employment practice, and note that such a claim is analyzed under the same standards as a retaliation claim under Title VII.  (Ds' Mem. at 12-14); *see Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  In her opposition, Plaintiff seems to concur, citing Title VII standards.  (P's Opp. at 5).  Accordingly, Plaintiff's retaliation claim can only be brought against Defendant Delany, for the reasons stated above.  "[F]or a retaliation claim under

---

[8] "There is a 'personal interest' or 'personal stake' exception to the intracorporate conspiracy doctrine, however, which permits a § 1985 claim where there are individuals who are 'motivated by an independent personal stake in achieving the corporation's objective.'"  *Salgado v. City of N.Y.*, No. 00-CV-3667, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (quoting *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 71-72 (2d Cir. 1976)).  Plaintiff does not allege that any such exception applies, and courts in this district have held that personal bias, by itself, is insufficient to defeat the intracorporate conspiracy doctrine.  *See Salgado*, 2001 WL 290051, at *9 (officer defendants' derogatory remarks about plaintiff's sexual orientation were insufficient to properly allege "personal interest" exception to intracorporate conspiracy doctrine); *Johnson v. Nyack Hosp.*, 954 F. Supp. 717, 723 (S.D.N.Y. 1997) ("[P]ersonal bias is not the sort of individual interest that takes a defendant out of the intraenterprise conspiracy doctrine," or else the exception would swallow the rule.).

§ 1983 to survive a . . . motion to dismiss, the plaintiff must plausibly allege that:  (1) defendants

acted under the color of state law, (2) defendants took adverse employment action against h[er],

(3) because [s]he complained of or otherwise opposed discrimination." *Vega v. Hempstead

Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015).  "That is, [Plaintiff] must plead (1)

engagement in opposition to an unlawful employment practice; (2) an adverse employment

action; and (3) factual matter rendering plausible an inference of causation between her protected

activity and the adverse employment action." *Ray v. N.Y. State Ins. Fund*, 2018 WL 3475467, at

*9 (S.D.N.Y. July 18, 2018).  "[T]o establish participation in a protected activity, a plaintiff is

required to show not an actual violation of the act, but only that he was acting under a good faith,

reasonable belief that such a violation existed." *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d

1564, 1569 (2d Cir. 1989).  "Moreover, the employer must be able to reasonably understand that

the complaint was directed at conduct prohibited by Title VII." *Bamba v. Fenton*, 758 F. App'x

8, 12-13 (2d Cir. 2018) (summary order).

        Plaintiff's claim fails.  First, Plaintiff alleges she reported a suspected incident of child

abuse in 2016-2017, which is outside of three-year statute of limitations period.  *Milan v.

Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) ("Section 1983 actions in New York are subject to

a three-year statute of limitations.").  Thus any alleged retaliatory activity that occurred prior to

August 31, 2018 is time-barred.  Even assuming that at least some of the retaliatory activity

occurred after this date[9] – and if it did, it is hard to see how it could be connected to the protected

---

        [9] The AC states that the directive to remain in her classroom (if indeed that is what
Plaintiff was told, as opposed to being required to stay in her room except for her free periods)
followed "[s]oon after" the report, (AC ¶¶ 67-69), and that the verbal abuse "intensified" after
the report, (*id.* ¶¶ 67, 72).  But it also says that Delany "increased" her abuse "[s]tarting in 2009
and running through 2019," (*id.* ¶ 71), and that Delany blackballed Plaintiff "[s]tarting in 2014
and running through 2019," (*id.* ¶ 73).  It is hard to see how mistreatment after August 31, 2018

activity, *see Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (To establish causation based on temporal proximity, period between protected activity and adverse action must be "very close.") – Plaintiff's claim fails because she does not plead a sufficient protected activity. Protected activity is complaining about or otherwise opposing discrimination. *Vega*, 801 F.3d at 91; *see Littlejohn v. City of N.Y.*, 795 F.3d 297, 316-17 (2d Cir. 2015). Here, Plaintiff does not allege that she complained about unlawful discrimination; rather, she reported a potential incident of child abuse.[10] Plaintiff does not even allege, let alone plausibly show, that she had a good faith reasonable belief that she was opposing an employment practice that is outlawed by federal law, or that there was any way her employer could have understood her report as such.

Therefore, Plaintiff's retaliation claim must also be dismissed.

----

– which by Plaintiff's account was the continuation of years of increasing abuse – could be attributable to the protected activity. *See Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity."), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) (summary order).

[10] To the extent Plaintiff meant to advance a claim of retaliation under New York Social Services Law § 413(c) and New York Labor Law § 740 – and she makes no such suggestion in her opposition – it would be even further outside the statute of limitations, *see Lomonoco v. Anne*, No. 15-CV-1163, 2016 WL 4402029, at *6 (N.D.N.Y. Aug. 18, 2016) (no private right of action under N.Y. Social Services Law so Plaintiff must bring action under N.Y. Labor Law § 740) (collecting cases); *Geldzahler v. N.Y. Med. Coll.*, 746 F. Supp. 2d 618, 630 (S.D.N.Y. 2010) ("The statute of limitations for bringing an action under Section 740 is one year after the alleged retaliatory action was taken"), and would fail for the same reasons as her other state-law claims, as discussed below. Plaintiff plainly did not intend to advance a claim of First Amendment retaliation, as her IC contained such claims, (IC at 8, 11-12), and they were removed in the AC.

### 1.      Hostile Work Environment

Plaintiff also alleges a hostile work environment claim, and as with her retaliation claim, does not state under which statutory scheme she intends this claim to fall, but I will assume she meant to invoke a race-based or gender-based § 1981 or § 1983 claim.

"To establish a hostile work environment under Title VII, § 1981, or § 1983, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21.  Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 321.  Plaintiff must come forward with "evidence not only that [she] subjectively perceived the environment to be hostile or abusive," but also that an objectively reasonable employee would perceive it to be so.  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003); *see Dawson v. County of Westchester*, 351 F. Supp. 2d 176, 186 (S.D.N.Y. 2004).  Furthermore, "[a] plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Brennan v. Metro. Opera Ass'n*, *Inc*., 192 F.3d 310, 318 (2d Cir. 1999).

Plaintiff alleges that from 2009 to 2019, Defendants, "collectively and individually," created a hostile work environment by publicly belittling and humiliating her, (AC ¶¶ 18-19; *see id.* ¶ 45), but because no details about this alleged abuse are provided, it is impossible to conclude that an objectively reasonable employee would plausibly view it as severe or pervasive. She also specifies that:  (1) from 2012 to 2019, Delany reassigned difficult students back to Plaintiff's classroom as punishment for Plaintiff speaking out, at an unspecified time, about

removal of aides, (*id.* ¶¶ 46-47)[11]; (2) from 2010 through 2019, Delany reprimanded Plaintiff without cause, (*id.* ¶ 48); (3) from 2013 to 2019, Delany tampered with Plaintiff's evaluations in an unspecified way, (*id.* ¶¶ 49, 55); (4) from 2009 through 2019, Delany ordered Plaintiff to take on students "outside her teaching grade group," train staff members for positions she did not hold, and work with staff members against whom Plaintiff had filed complaints, (*id.* ¶ 50); (5) at an unspecified time, Delany did not provide Plaintiff with information about students' assessments and performances, (*id.* ¶ 52); (6) throughout Plaintiff's entire tenure, Delany divulged unspecified sensitive information about Plaintiff, (*id.* ¶ 53); and (7) at an unspecified time, Delany directed support staff to not schedule Plaintiff for meetings with administrators, (*id.* ¶ 54).

Without more detail, it is dubious whether these alleged events, over a ten-year period, are plausibly objectively severe or pervasive enough to constitute a hostile work environment. But regardless, Plaintiff plainly fails to show how any of these allegations, singularly or in the aggregate, occurred because of her membership in a protected class.  Even in her opposition, Plaintiff addresses only whether the environment was sufficiently hostile, and makes no effort to suggest, let alone point to facts that support, that the hostility arose because she is Black and/or female.  Allegations of unfair treatment directed at a member of a protected class do not establish a claim absent a basis to conclude that unfair treatment arose because of the victim's

---

[11] To the extent this allegation could be interpreted as advancing a claim that the hostile work environment was retaliation for this protest, it would fail for two reasons.  First, as set forth in note 11 above, Plaintiff withdrew her First Amendment claims.  Second, when teachers complain internally about their work conditions, they are speaking as employees, not citizens, and their speech does not constitute protected activity that can support a retaliation claim.  *See, e,g.*, *Brooke v. County of Rockland*, No. 21-598-CV, 2022 WL 6585350, at *3-4 (2d Cir. Oct. 11, 2022); *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010); *Geer v. Gates Chili Cent. Sch. Dist.*, 577 F. Supp. 3d 147, 177 (W.D.N.Y. 2021).

membership in that class.  *See Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002)

("Even if [plaintiff's] highly dubious claim that he was unfairly singled out for punishment by

the instructors is credited, [plaintiff] has done little more than cite to his alleged mistreatment

and ask the court to conclude that it must have been related to his race."); *Varughese v. Mount*

*Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *42 (S.D.N.Y. Mar. 27, 2015)

("fallacy" for plaintiff to say:  "I belong to a protected class; something bad happened to me at

work; therefore, it must have occurred because I belong to a protected class"); *Rissman v.*

*Chertoff*, No. 08-CV-7352, 2008 WL 5191394, at *4 (S.D.N.Y. Dec. 12, 2008) ("In essence,

plaintiff alleges that because he was yelled at [by his supervisors], this must have been because

[of his protected status]. Such conclusory and speculative statements are insufficient.").

> Unfortunately, the term "hostile work environment" has been interpreted by some in the general public to refer to workplaces with abusive bosses, bullying, cutthroat competition, nastiness, or unfairness. While those workplaces may be hostile in the colloquial sense, they do not violate the law unless they are that way because of an employee's protected characteristic.

*Estevez v. Berkeley Coll.*, No. 18-CV-10350, 2021 WL 3115452, at *19 n.21 (S.D.N.Y. July 19,

2021), *aff'd*, No. 21-1988, 2022 WL 16843460 (2d Cir. Nov. 10, 2022).

Accordingly, Plaintiff's hostile work environment claim is also dismissed.

**B.**   **State Law Claims**

Defendants argue that Plaintiff's state law claims for assault and defamation must be

dismissed because Plaintiff did not file a notice of claim, as required by N.Y. Educ. Law. § 3813,

and they are time-barred, given that state law claims brought against a school district or its

employees are subject to a one-year statute of limitation.  (Ds' Mem. at 15-17.)  Plaintiff did not

address her state law claims in her opposition, and as a result, those claims are deemed

abandoned and dismissed.

### C. <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments

previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*,

514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended, after having the benefit of a pre-motion letter from

Defendants outlining the proposed grounds for dismissal, (ECF No. 8), and the discussion at the

February 23, 2022 pre-motion conference, (*see* Minute Entry dated Feb. 23, 2022).  In general, a

plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them,

is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S.*

*Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the

deficiencies in his complaint when he first amended, he clearly has no right to a second

amendment even if the proposed second amended complaint in fact cures the defects of the first.

Simply put, a busy district court need not allow itself to be imposed upon by the presentation of

theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242

(S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to

cure the defects in their complaints, including a procedure through which the plaintiffs were

provided notice of defects in the Consolidated Amended Complaint by the defendants and given

a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a

proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v.*

*Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not

entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Moreover, Plaintiff has not asked to amend or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

IV.   **CONCLUSION**

For the foregoing reasons, Defendants' motion is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 25), and close the case.

**SO ORDERED.**

Dated:  January 9, 2023
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.